**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:23-cr-00002-GFVT-MAS |
| v. ) | |
| ) | |
| **EMILIO COBIX-ESPINOZA,** ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Emilio Cobix-Espinosa ("Cobix-Espinosa") illegally re-entered the United States in violation of 8 U.S.C. § 1326(a). [DE 1]. The United States orally sought a detention hearing under 18 U.S.C. § 3142(f)(2)(A), arguing that this case involves a serious risk that Cobix-Espinosa will flee. [DE 10]. As discussed below, the Court now orders Cobix-Espinosa's detention because no condition or combination of conditions will reasonably assure Cobix-Espinosa's appearance as required in this matter. 18 U.S.C. § 3142(e).

### I.  BACKGROUND

At Cobix-Espinosa's initial appearance, the United States moved for a detention hearing under 18 U.S.C. § 3142(f)(2)(A). [DE 10]. The Court conducted a detention hearing under § 3142(e). [DE 15]. At the hearing, the United States primarily argued that detention was mandated because no set of conditions could assure Cobix-Espinosa's appearance in this matter as required. Both parties proffered evidence in support of their position, and the United States presented the testimony of United States Bureau of Immigration and Customs Enforcement (ICE) Officer

William Moss ("Officer Moss"). [DE 16]. The Court took the ultimate issue of Cobix-Espinosa's detention under advisement.

## II.    ANALYSIS

When the United States moves to detain a defendant pending trial, the Court conducts a two-step inquiry under the Bail Reform Act ("BRA"). *See, e.g.*, *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). First, the Court must determine whether a detention hearing is even permissible under § 3142(f). "Congress did not intend to authorize preventative detention unless the judicial officer first finds that one of the section 3142(f) conditions for holding a detention hearing exists." *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). *See also United States v. Hardon*, No. 98-1625, 1998 WL 320945, at *1 (6th Cir. June 4, 1998); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992). Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). In making that determination, the Court must consider the factors outlined in § 3142(g).

At first glance, this analysis appears simple. However, anyone with experience with the BRA will tell you the statute functions more like a twisting labyrinth than an easily navigated roadway. In this case, the Court must determine the scope of the detention-hearing inquiry under § 3142(e) when that hearing is authorized solely on the basis that the defendant poses a serious risk of flight under § 3142(f)(2)(A).

A.     **INQUIRY 1: IS THE UNITED STATES ENTITLED TO A DETENTION HEARING?**

At step one, the Court determines whether the United States is entitled to a detention hearing under § 3142(f). That section "does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [circumstances listed in (f)(1) and (f)(2)]." *Ploof*, 851 F.2d at 9–10. Subsection (f) serves to strictly limit the cases in which the United States can request a detention hearing.[1] *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). *See also United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *5 (M.D. Tenn. May 27, 2021) (discussing the two-step process at length and concluding that under Sixth Circuit law "if [subsection (f)] circumstances are not present, a detention hearing (and, thus, detention) is simply unauthorized, regardless of how the Government would fare with respect to risk of non-appearance and danger to other persons or the community").

Under (f)(1), the Government can move for pretrial detention in cases involving specified offenses, including crimes of violence, certain felonies involving minor victims or firearms, and high-penalty controlled-substance offenses, among others. *See* 18 U.S.C. § 3142(f)(1)(A)-(E). The Court must make a finding that the charged crime fits into one of the categories. *United States v. Hardon*, No. 98-1626, 1998 WL 320945, at *1 (6th Cir. June 4, 1998) (holding that the district court must make its own determination of whether the circumstances relied on by the Government actually exist under (f)(1)). If so, the United States may seek detention; if not, the United States must look to (f)(2).

---

[1] The BRA charts four outcomes mandating that the Court "shall issue an order that, pending trial," the Defendant be: (1) released on personal recognizance or an unsecured bond under § 3142(b); (2) released on conditions under § 3142(c); (3) temporarily detained for purposes not at issue here under § 3142(d); or (4) detained pretrial under § 3142(e). 18 U.S.C. § 3142(a)(1)-(4). If the Government is seeking pretrial detention, then § 3142(e) requires as a predicate that the Court conduct "a hearing pursuant to the provisions of subsection (f)[.]" *Id.* § 3142(e)(1).

Under (f)(2), either the Government or the Court can move for pretrial detention in cases involving a serious risk of flight or a serious risk of obstruction, witness tampering, or juror intimidation. § 3142(f)(2)(A),(B). The United States must demonstrate by a preponderance of evidence that such circumstances exist to be entitled to a detention hearing. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). *See also White*, 2021 WL 2155441, at *7.[2] And the defendant may challenge that the United States has met that burden. *See United State v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1289 (D. Utah 2017) (defendant "cannot now contest the United States' right to a detention hearing after previously submitting to the hearing and not contesting the basis for the hearing").

In this case, the United States moved for a detention hearing under § 3142(f)(2)(A), which requires the Court to find that the defendant poses a serious risk of flight. Notably, the "risk of flight" under subsection (f)(2)(A) is different from the "risk of nonappearance" that subsection (e) directs the Court to assess at a detention hearing. *See White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("'[I]t is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk. In the context of measuring and managing risks, many defendants who merely fail to appear differ in

---

[2] Notably, while the standard for demonstrating that a detention hearing is permitted under § 3142(f)(2)(A) and the standard for showing detention is warranted based on the defendant's risk of nonappearance under § 3142(e) are the same, the analyses are very different. Under subsection (f)(2)(A), the Court must simply find by a preponderance of evidence that the defendant poses a serious risk of flight. Under subsection (e), however, the Court must find by a preponderance of evidence that available *conditions of release* can reasonably ensure the defendant's future appearance at court proceedings, despite the defendant's risk of nonappearance or flight. Thus, even when the United States can establish by a preponderance of evidence that a defendant poses a serious risk of flight under subsection (f), the analysis under subsection (e) at the detention hearing is not a foregone conclusion. The Court may still find that conditions of release can sufficiently mitigate the risk of flight (a type of nonappearance).

important ways from their fugitive cousins. Precision about these distinctions is constitutionally mandated and statutorily required.'") (quoting Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677 (2018)). Indeed, "risk of flight" is more correctly viewed as a specific type or subcategory of "risk of nonappearance." *See id.* ("Flight risk is properly assigned to defendants who are expected to flee a jurisdiction. This is a small, and arguably shrinking, subcategory of a much larger group of defendants who pose risks of nonappearance." (quoting Gouldin, *supra*, at 683)). Courts and litigants often ignore this distinction, likely because the distinction makes no practical difference in many cases. *Id*. But the distinction sometimes matters because evidence suggesting the defendant poses a general risk of nonappearance does not necessarily support a finding that the case involves a serious risk of flight under subsection (f), a risk that would contemplate a voluntary action by a defendant to flee. For example, as the Tenth Circuit explained, "one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene." *United States v. Ailon-Ailon,* 875 F.3d 1334, 1338 (10th Cir. 2017). The difference between the general risk of nonappearance and the serious risk of flight, in some contexts, is stark. Certainly, the immigration context is one.

In support of its motion under § 3142(f)(2)(A), the United States proffered that Cobix-Espinosa is subject to an ICE administrative detainer. Cobix-Espinosa conceded that the United States had produced preponderant evidence that he was a serious risk of flight. So, the Court will look no further. *See White*, 2021 WL 2155441, at *6 (explaining that, when the defendant does not challenge the United States' right to a detention hearing, the defendant has arguably waived or forfeited the right to object to a hearing).

5

**B.     INQUIRY 2: ARE THERE ANY CONDITION OR COMBINATIONS OF CONDITIONS OF RELEASE THAT WILL PROTECT THE SAFETY OF THE COMMUNITY AND REASONABLY ASSURE THE DEFENDANT'S APPEARANCE AT TRIAL?**

At step two—after the Court has determined that the United States is entitled to a detention hearing under § 3142(f)—the Court must conduct a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community under § 3142(e). If no set of conditions can reasonably assure appearance and safety, the Court must order detention. § 3142(e). The Court considers the factors under § 3142(g) in making that determination.

**1.     The scope of evidence the Court can consider under § 3142(e) in a detention hearing authorized by § 3142(f)(2)(A)**

Before turning to the ultimate issue of pretrial detention under § 3142(e), however, it is necessary to address the proper scope of the Court's inquiry under that provision where, as here, the detention hearing is authorized solely because the defendant poses a serious risk of flight under § 3142(f)(2)(A). That is, if the basis for holding a detention hearing is the defendant's serious risk of flight under § 3142(f)(2)(A), is the Court limited to considering only evidence of nonappearance that relates specifically to the risk of flight or, alternatively, can the Court consider the general risks of nonappearance and danger in determining whether to order detention under § 3142(e)? Courts are generally split on this point, and the Sixth Circuit has not addressed this issue directly.[3]

Two interpretations of the BRA answer this question differently. As one court described it, the two approaches are described as the *Holmes* interpretation and the *Himler* interpretation. *United States v. Gibson*, 384 F. Supp. 3d 955, 960-62 (N.D. Ind. 2019). Although the rationale

---

[3] The parties did not argue either interpretation at the hearing, and the Court did not limit their cases to evidence relevant to flight. Instead, the parties addressed the general risk of nonappearance. The Court finds it necessary to address this issue because it dictates the scope of evidence it can rely upon in its § 3142(e) determination.

for these approaches did not originate with *Holmes* or *Himler*, the Court will use those cases simply as a mechanism to differentiate the approaches more easily.

Under the *Holmes* interpretation, based upon *United States v. Holmes*, 438 F. Supp. 2d 1340 (S.D. Fla. 2005), subsection (f) merely provides the criteria for the first inquiry as to whether the United States is permitted to move for detention. *See also United States v. Castellanos-Almendares*, No. 19-cr-80144, 2019 WL 3937862 (S.D. Fla. 2019); *United States v. Hamade*, No. 15-237, 2019 WL 7283990, at *5 (D. Minn. Dec. 27, 2019); *United States v. Montoya*, 486 F. Supp. 2d 996, 1004–05 (D. Ariz. 2007). Per *Holmes*, once the § 3142(f) criterion is met, the Court may then consider, and order detention based on, the defendant's risk of nonappearance or danger to another person or the community under § 3142(e). That is, the Court's analysis under § 3142(e) is not tailored by the basis for the hearing under § 3142(f); the Court simply considers whether any set of conditions can reasonably assure the appearance of the defendant and the safety of another person and the community regardless of the basis for the hearing. As *Holmes* stated, for example,

> dangerousness as grounds for detention is not excluded in cases involving detention hearings brought under (f)(2). This conclusion is based on a plain reading of the statute's unambiguous language and structure, the Act's legislative history, and the [*United States v. Johnson*, 399 F.3d 1297 (11th Cir. 2005)] and [*United States v. Singleton*, 182 F.3d 7 (D.D.C. 1999)] courts' analyses. This Court is convinced that Congress intended that dangerousness be considered in all instances whether arising under subsection (f)(1) or (f)(2).

*Id.* at 1351.

As referenced in the above quote, the *Holmes* court and its progeny base this position on a strict, plain text interpretation of the BRA. For example, while Congress elected not to use nonappearance and instead used the phrase "serious risk of flight" for (f)(2)(A), Congress likewise specifically elected to emphasize nonappearance and danger generally three times in subsections (e), (f), and (g) despite the limited language in (f)(1) and (f)(2). If Congress wanted the basis for

detention under subsection (f) to later limit considerations under (e) and (g), it could have expressly said as much.

*Holmes* and its progeny also argue such a conclusion is supported by the legislative history. Without question and as referenced above, Congress crafted 3142(f) such that it "serve[s] to limit the types of cases in which detention may be ordered prior to trial" and further, that the BRA itself is directed toward "a small but identifiable group of particularly dangerous defendants." S.Rep. No. 225, at 20, and 6, U.S.C.C.A.N.1984, pp. 3203, 3188.  The *Holmes* interpretation concludes that subsection (f) is the narrow filter or gatekeeper intended by Congress.  But once that threshold is satisfied, Congress plainly intended for the Court to then consider all nonappearance and danger risks.

By contrast, the *Himler* interpretation, based upon *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986), provides that the basis for detention under § 3142(f) constricts the Court's analysis under § 3142(e) and (g). *See also Gibson*, 384 F. Supp. 3d 955, 962; *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 967 (E.D. Wisc. 2008). For example, if the United States successfully moves for detention under § 3142(f)(2)(A) on the basis that the case involves a serious risk of flight, then the Court may only consider flight risks in its (e) and (g) analysis and must forgo any broader consideration of nonappearance and danger.  Like the *Holmes* interpretation, *Himler* and its progeny cite to the same legislative history from Congress imploring courts to construe (f) narrowly.

Moreover, the *Himler* interpretation often points to the broader policy considerations that may result with the *Holmes* interpretation:

> The *Holmes* interpretation runs into the very problem [*United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095 (1987)] indicated was not present in the Bail Reform Act. That is, this broad reading of the Bail Reform Act has the potential to apply the Act to a nearly limitless range of cases, thereby raising constitutional concerns under

8

> the Due Process Clause of the Fifth Amendment and the Eighth Amendment's ban on excessive bail. *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095 ("The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest."). Any reading of the Bail Reform Act that allows danger to the community as the sole ground for detaining a defendant where detention was moved for only under (f)(2)(A) runs the risk of undercutting one of the rationales that led the *Salerno* Court to uphold the statute as constitutional.

*Gibson*, 384 F. Supp. 3d 955, 963.

The Court finds *Holmes*'s statutory construction more consistent with the text, legislative history, and the overarching policy considerations of the BRA. It thus adopts that interpretation with respect to detention hearings authorized under § 3142(f)(2)(A). Where, as here, the United States moves for and is entitled to a detention hearing solely on the basis of the defendant's serious risk of flight under § 3142(f)(2)(A), the Court may examine, and order detention based on, the defendant's risks of nonappearance and danger. In other words, the Court's analysis under § 3142(e) is not tailored in any way by the Court's finding that the detention hearing was authorized only by the defendant's serious risk of flight under § 3142(f)(2)(A).

The text of the BRA plainly supports this result. Both *Holmes* and *Himler* agree that § 3142(f), by its own language, limits the types of cases in which the United States can seek detention by providing that the Court shall hold a detention hearing in cases involving one of the seven circumstances listed in subsection (f)(1) and (f)(2). Importantly, § 3142(f) provides this limitation while still directing the Court to determine at the hearing, once it finds that the case involves one of the circumstances in (f)(1) or (f)(2) is present, "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any person and the community[.]" § 3142(f). Thus, "the structure of subsection (f) indicates that Congress's aim was not to constrain the basis for detention to the grounds asserted for holding a detention hearing." *United States v. Alcorta-Ambriz*, No. 20-mj-01328, 2020 WL 5709149, at *5

9

(D. N.M. Sept. 24, 2020). Rather, the Court is directed without limitation to assess the defendant's risk of nonappearance and danger to the community in determining whether detention is appropriate, regardless of the basis for the detention hearing. Similarly, other provisions of § 3142 direct the Court to hold a hearing to consider the defendant's risks of nonappearance and danger without limitation or any reference to the underlying basis for the hearing under subsection (f):

> § 3142(c): "If the judicial officer determines that the release described in subsection (b) of this section will not **reasonably assure the appearance of the person** as required or will endanger the **safety of any other person or the community**, such judicial officer shall order the pretrial release of the person . . . ."
>
> § 3142(e)(1): "If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will **reasonably assure the appearance of the person** as required and the **safety of any other person and the community**, such judicial officer shall order the detention of the person before trial."
>
> § 3142(g): "The judicial officer shall, in determining whether there are conditions of release that will **reasonably assure the appearance of the person** as required and the **safety of any other person and the community**, take into account the available information concerning . . . ."

(Emphasis added).

The *Holmes* interpretation gives full effect to the limiting provisions of subsection (f) and the broader directives in these other provisions to consider both nonappearance and danger at the detention hearing. "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 540 U.S. 526, 534, (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). In doing so, "no clause, sentence, or word of a statute should be read as superfluous, void, or insignificant." *In re City of Detroit*, 841 F.3d 684, 696–97 (6th Cir. 2016) (internal quotation marks and citation omitted). And *Holmes's* construction of subsections (f) and (e) makes sense when considering that (f) simply limits the circumstances in which a Court can consider a defendant's risk of nonappearance and

10

danger. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. . . .")

By contrast, the *Himler* interpretation overrides the plain language of subsections (c), (e), (f), and (g) and reads in a significant limitation on the Court's detention analysis that simply does not appear in the text. Stated another way, the *Himler* approach construes subsections (f)(1) and (f)(2) in a manner consistent with the plain meaning of their text, but then ignores the text of other provisions plainly directing the court to engage in a full danger and nonappearance analysis at the detention hearing. Had Congress intended for courts to tailor the analysis of the defendant's risk of danger or nonappearance to the basis for the hearing under subsection (f) in the way that *Himler* suggests, it had several opportunities to say so. Yet, it did not. See *United States v. 0.376 Acres of Land*, 838 F.2d 819, 824 (6th Cir. 1988) ("Congress said nothing of the sort, however, and we must not write into the statute a provision that Congress did not see fit to put there."). Consequently, a textual reading of the BRA fully supports the *Holmes* interpretation.

Next, the same pattern results when looking at the legislative history of the BRA. Again, both the *Holmes* and *Himler* interpretation cite the same history in support of their interpretations. "[T]he requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20, as reprinted in U.S. Code Cong. & Admin. News 1984, p. 3203). The congressional record includes statements from senators indicating that the role of (f)(1) is to outline specific "categor[ies] of prosecutions for which pretrial detention on grounds of dangerousness would be authorized". 131 Cong. Rec. S00000-12, 1985 WL 707152, at *52. As for (f)(2), those categories preserve the "inherent right

11

of the trial court to protect the integrity of the judicial process" in cases specifically involving serious flight or obstruction risks. *Id*. at *53. Under the *Holmes* interpretation, this legislative history further supports applying (f)(1) and (f)(2) narrowly. Yet this history in no way suggests that (f)(1) and (f)(2) negate (c), (e), (f), and (g), which all require the court to consider both nonappearance and danger. Like with the textual evidence, the *Himler* interpretation transposes Congress's intent for (f)(1) and (f)(2) onto other provisions without any congressional suggestion of the kind. The *Holmes* interpretation both honors Congress's intent concerning (f)(1) and (f)(2) without allowing that intent to somehow distort other provisions.

Third, the conclusion of the *Himler* interpretation opens the door to impractical results. The Court in *United States v. Catellanos-Almendares,* No. 19-cr-80144, 2019 WL 3937862 (S.D. Fla. 2019), highlighted this fact:

> If Defendant's position were accepted, it would mean that in a case where the Government is statutorily authorized to move for pretrial detention on the serious risk of flight prong in the first instance, but is not statutorily authorized to move for pretrial detention on the basis of dangerousness in the first instance, the Court could simply never consider a defendant's alleged dangerousness in determining detention or conditions of release. This makes no sense. If the Court, at a detention hearing properly sought by the Government under the Bail Reform Act on serious risk of flight grounds, determines that, based on the facts, proffer, testimony, and argument presented, the release of the defendant would constitute a danger to the community or a person in the community, the Court cannot simply turn a blind eye to those facts. In such a case, the Court is required by the Bail Reform Act to consider a defendant's alleged dangerousness as this Court will do in the instant case.

*Id*. at *3. *See also United States v. Salgado*, No. 20-53-JJM, 2020 WL 4747931, at *4 (D.R.I. Aug. 17, 2020) (citing the same practical concerns of the *Himler* interpretation).

Moreover, the *Holmes* interpretation in no way runs afoul of the Supreme Court's seminal decision in *United States v. Salerno* as suggested by *United States v. Gibson*, 384 F. Supp. 3d 955 (N.D. Ind. 2019). The emphasis by the Supreme Court in *Salerno* was to limit the type of cases to which the United States could even seek detention. As *Gibson* framed *Salerno*'s concerns, a

12

"broad reading of the Bail Reform Act has the potential to apply the [BRA] to a nearly limitless range of cases, thereby raising constitutional concerns under the Due Process Clause of the Fifth Amendment and the Eighth Amendment's ban on excessive bail." Again, the *Holmes* interpretation applies (f)(1) and (f)(2) narrowly, thereby limiting, just as dictated by *Salerno*, the range of cases in which the United States can seek pretrial detention. Again, the *Himler* interpretation lets the fair concerns of *Salerno* regarding (f)(1) and (f)(2) run amok on the other provisions of the BRA without any textual or legislative support for permitting such statutory bedlam.

In the end, the aims of both the *Holmes* and *Himler* interpretations rightly make every effort to strictly apply the rigors of § 3142(f)(1) and (f)(2) to ensure the United States can only seek detention in cases involving the limited circumstances listed therein. This construction is supported by the plain text of those provisions as well as the legislative history. But the *Himler* approach departs from the plain reading of § 3142(e)'s directive to assess whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" by reading into that provision a significant limitation that simply does not appear in the text. Accordingly, the Court adopts the *Holmes* interpretation, and holds that its detention decision under § 3142(e) may properly be grounded in Cobix-Espinosa's general risk of nonappearance and danger.

Finally, the Court recognizes that this interpretation of § 3142(e) and (f) calls into questions its prior holding in *United States v. Lamar*, 600 F. Supp. 3d 714 (E.D. Ky. 2022). There, the United States sought detention under § 3142(f)(2)(B), and the Court limited the proof at the detention hearing to grounds of obstruction, witness tampering, or juror intimidation. In other words, the Court in *Lamar* applied the *Himler* interpretation. Although the current matter concerns

13

§ 3142(f)(2)(A), the Court would, upon reconsideration and further study, likely employ the *Holmes* interpretation to § 3142(f)(2)(B). The Court will not speculate if that would have led to a different result in *Lamar*, but the Court leaves the application of the *Holmes* interpretation to § 3142(f)(2)(B) to a future case where that provision is at issue.

### 2.  Cobix-Espinosa's Pretrial Detention Under § 3142(e)

Having defined the scope of the Court's inquiry under § 3142(e) in this case, the Court now considers whether that provision mandates Cobix-Espinosa's pretrial detention. The United States' motion for detention was originally premised on 18 U.S.C. § 3142(f)(2)(A). [DE 10]. At the detention hearing, the United States argued almost exclusively that no set of conditions can reasonably assure that Cobix-Espinosa will appear as required in this matter.[4] In support of its argument, the United States proffered the information in the United States Probation Office's ("USPO") Presentence Investigation Report ("PIR") [DE 17]. The Court agrees and holds that detention is required in this matter.

This is not a presumption case, *see* § 3142(e)(2),(3), so the United States bears the burden of establishing that detention is warranted. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based

---

[4] The United States only briefly asserted that Cobix-Espinosa also poses a risk of danger, and it did so only by citing the USPO's determination contained in the PIR that Cobix-Espinosa presented a risk of danger to the community. [DE 17, Page ID# 41]. Aside from this brief statement, the United States' detention argument focused exclusively on nonappearance. Because of the brevity of the United States' argument on dangerousness, and because the Court finds that the Untied States proved by a preponderance of the evidence that no set of release conditions can ensure Cobix-Espinosa's future appearance in this matter, the Court does not address danger. But the Court notes, however, that it is permitted to do so despite the detention hearing's basis under § 3142(f)(2)(A).

detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Importantly, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance[]").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

First, the nature and circumstances of Cobix-Espinosa's charged offense weigh strongly in favor of detention. Cobix-Espinosa was charged with illegal reentry under 8 U.S.C. § 1326(a), [DE 1], and he was previously removed from the United States in 2006, 2015, and 2017. [DE 17, Page ID# 41]. While this charged offense is not one specifically listed in § 3142(g)(1), "the nature of the [alleged] crime—returning to the United States, despite prior removal from this country by court order—indicates [Cobix-Espinosa] is not disposed to follow the orders of this Court." *United States v. Ramirez-Vaca*, No. 5: 21-020-DCR, 2021 WL 1741851, at *3 (E.D. Ky. May 3, 2021) (quoting *United States v. Aleman-Duarte*, 2020 U.S. Dist. LEXIS 6872, at *13–14, 2020 WL

236870 (E.D. Tenn. Jan. 15, 2020)) (first alteration in original). This is especially true here, as Cobix-Espinosa was removed from this country on three separate occasions.

Next, the second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). This factor assesses the weight of evidence that the defendant poses an irremediable risk of danger or, in this case, nonappearance, "not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness [or nonappearance], rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948). The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). Given that these factors often overlap, the Court analyzes them together. Both factors weigh in favor of detention.

Cobix-Espinosa appears to lack strong community ties or a history of lengthy, stable residence in the community. [DE 17, Page ID# 37]. He was born in Mexico, and four of his five siblings remain there. [*Id*.]. He lived near St. Louis, Missouri, from 2012 to 2017, in between periods in which he was removed from the United States. [*Id*.]. He now resides in Louisville, Kentucky, where he has shared an apartment with his cousin for the last year. [*Id*.]. Cobix-Espinosa has a wife who resides in Missouri, and the two have a child together who resides in Missouri with the child's maternal grandmother. [*Id.* at Page ID# 38]. However, Cobix-Espinosa's contact with his wife appears to be minimal, as she reported that she believed the two

16

were divorced for some time, but later learned that Cobix-Espinosa has failed to file the paperwork, so the two continue to be legally married. [*Id*.]. His wife also reported that she has never traveled to Kentucky to visit Cobix-Espinosa, and Cobix-Espinosa only occasionally travels to Missouri to visit his child there. [*Id*.]. Further, Cobix-Espinosa has another child who resides in Taylorsville, Kentucky, along with the child's mother. [*Id*.].

Cobix-Espinosa has some level of employment—he reported only that he has worked as a waiter for a restaurant for the past year—which weighs in favor of release. [*Id*.]. However, the PIR indicates that he has some ongoing issues with substance use disorder, and he has multiple criminal convictions for alcohol-related offenses. [*Id*. at Page ID# 39–40]. Such a characteristic typically weighs in favor of detention. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (suggesting some issues with substance use disorder indicate the defendant is more likely to flee) (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)). And, as stated earlier, Cobix-Espinosa's history of re-entering the country despite prior removals by court order indicate a propensity to ignore this Court's orders. This fact weighs in favor of detention.

However, even if the Court were to ignore these telling facts, Corbix-Espinosa's likely removal upon release from custody weighs heavily in favor of pretrial detention under the second and third factors. Of course, Cobix-Espinosa's non-citizen status, alone, is not determinative of nonappearance risk under the BRA. *See, e.g., United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018) (emphasizing that the BRA and immigration analyses are distinct); *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001) (emphasizing that even "a deportable alien" is not categorically "barred from release" under the BRA , but noting that immigration is still a factor to weigh in the flight analysis "to the extent that the government

chooses to present it in support of its motion for detention"). However, Officer Moss unequivocally testified at the detention hearing that Cobix-Espinosa is subject to an outstanding order of removal, due to his three previous deportations. As a result, if released, Cobix-Espinosa will be placed in ICE custody and promptly deported from the United States. Although Officer Moss testified that Cobix-Espinosa could theoretically pursue a claim for asylum and remain in ICE custody until an Immigration Judge can adjudicate his claim, that outcome is merely speculative. Indeed, Officer Moss testified that, although Cobix-Espinosa expressed fear in returning to Mexico, thereby triggering the process for determining whether Cobix-Espinosa qualifies for asylum, an asylum officer must still determine whether Cobix-Espinosa's fear is sufficient in order for Cobix-Espinosa to get a hearing before an Immigration Judge on that issue and avoid prompt deportation. As such, on the record before the Court, the United States has shown that Cobix-Espinosa's release on bond would very likely lead to his prompt removal from this country, creating a significant risk—a near certainty but for the possibility of asylum—that Cobix-Espinosa will not appear for proceedings as required in this matter. This fact weighs heavily in favor of detention, and it alone nearly compels a finding that the United States has demonstrated by a preponderance of evidence that no release condition can assure Cobix-Espinosa's future appearance in this matter.[5] *See United States v. Lucas*, No. 4:08CR3139, 2008 WL 5392121, at

---

[5] The Court notes that, although Cobix-Espinosa's removal order is certainly relevant and probative evidence of his risk of nonappearance under § 3142(e) and (g), it may not necessarily compel a finding that he also presents a risk of flight and that the United States is therefore entitled to a hearing under § 3142(f)(2)(A). Other courts have construed § 3142(f)(2)(A)'s requirement that the case involve a risk that the "person will flee" as requiring a showing that the defendant poses a risk that he will *intentionally* avoid appearing in court. *See, e.g., United States v. White*, No. 3:21-mj-0407, 2021 WL 2155441, at *8–10 (M.D. Tenn. May 27, 2021) (noting that "flight" under § 3142(f)(2)(A) "seems to connote intentional and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings[,]" and therefore defining "flight" as "*a risk that the defendant will intentionally avoid appearing in court as required*[]"). Thus, it is an open question for this Court whether evidence that defendant may be involuntarily

18

*3 (D. Neb. Dec. 19, 2008) ("An outstanding order of removal would be strong evidence of likely nonappearance). *See also United States v. Vasquez*, No. 09–14(DSD/JJG), 2009 WL 150661, at *1 (D. Minn. Jan. 21, 2009) (detaining a defendant who was an aggravated felon subject to an outstanding deportation order upon its finding that defendant "presents a risk of nonappearance because he is currently in the United States illegally, has been deported once before and is subject to a pending deportation order[]").

Considering Cobix-Espinosa's lack of strong community ties, lack of a lengthy history in the community, apparently ongoing substance use issues, and, importantly, the valid, enforceable removal order against him, the Court finds that the third BRA factor weighs strongly in favor of Cobix-Espinosa's detention. As a result, there is weighty evidence that he will not appear for proceedings in this matter if released, so the second BRA factor also favors detention.

Accordingly, balancing the § 3142(g) factors, the Court finds there are no conditions or combination of conditions that can reasonable assure Cobix-Espinosa's appearance at trial in this matter. The BRA mandates detention based on the risk of nonappearance.

### III.  CONCLUSION

In sum, the Court finds that the United States proved by a preponderance of the evidence that Cobix-Espinosa is an irremediable nonappearance risk. Therefore, the BRA mandates that Cobix-Espinosa remain in detention pending trial. The Court grants the United States' pending oral motion for detention.

Cobix-Espinosa is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

---

removed from the country, and therefore unable to appear at proceedings as required, is sufficient to trigger a detention hearing under § 3142(f)(2)(A).

19

Cobix-Espinosa must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Cobix-Espinosa to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Entered this the 9th day of February, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY